Filed 11/7/23  Marriage of Thompson CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| In re the Marriage of RICHARD LEE THOMPSON and RHONA FOGARTY THOMPSON. | |
| RICHARD LEE THOMPSON,  Appellant,  v.  RHONA FOGARTY THOMPSON,  Respondent. | A164210  (San Mateo County Super. Ct. No. 19FAM01440) |

Richard (Rick) Lee Thompson appeals from an order requiring him to pay Rhona Fogarty Thompson[1] $300,000 in sanctions pursuant to Family Code section 271.[2]  Rick makes two claims on appeal—the trial court abused its discretion by refusing to hear live testimony and the court erred in finding he failed to pay an earlier discovery sanction.  We agree with the latter contention and therefore reverse in limited part.  In all other respects, we affirm.

---

[1]  As do the parties, we use first names for clarity.

[2]  All further statutory citations are to the Family Code unless otherwise indicated.

1

## BACKGROUND[3]

Two years into this contentious divorce proceeding, Rhona sought $600,000 in sanctions against Rick pursuant to section 271. She maintained Rick refused to engage in behavior that advanced settlement or assisted in preparing the case for trial. In her supporting declaration, Rhona averred Rick failed to reply to Rhona's attempts to resolve multiple issues, impeded the discovery process, maintained an unreasonable position regarding the status of the marital estate, and instructed his attorney to communicate with him only once a month. As an example, Rhona stated her counsel had proposed to Rick's counsel that the parties appoint a discovery referee, but Rick failed to respond. Indeed, he had yet to respond at the time she filed her section 271 motion.

Rick filed opposition, which included his own declaration. Rick took issue with Rhona's claim he had engaged in obstructive conduct and maintained there was no basis to award sanctions. According to Rick, the parties had reduced litigation costs by reaching multiple stipulations, he had attempted to reach a settlement with Rhona but she took unreasonable positions, and any alleged discovery misconduct did not, in any event, warrant sanctions. Rick also requested that the court defer the motion until trial, so each side could fully present their case and the court could evaluate the totality of the parties' conduct to determine whether sanctions were warranted. He did not, however, specifically request an evidentiary hearing

---

[3] We draw some of the background from our prior opinion in Rick's appeal from an order interpreting the parties' premarital agreement (*Thompson v. Thompson* (August 14, 2023, A164992) [nonpub. opn.]), of which we take judicial notice on our own motion. (Evid. Code, § 459.)

2

pursuant to section 217. Nor did he identify any witness(es) whose testimony he sought to elicit at such a hearing.[4]

At the hearing on Rhona's motion, the trial court stated it had read over 500 pages of pleadings, including the parties' moving and opposing papers and their declarations. For the first time, Rick requested an evidentiary hearing pursuant to section 217 and California Rules of Court, rule 5.113 (rule 5.113). He maintained the pleadings demonstrated that material facts were in controversy, which mandated a hearing to assess the parties' credibility. Other than generally asserting the court needed to assess the credibility of "each party," Rick did not identify whose testimony he sought at such an evidentiary hearing, nor did he make an offer of proof as to the parties' supposed testimony.

At the conclusion of the hearing, the trial court stated the parties' oral presentations were a "rehash" of what was in the pleadings, and it took the matter under submission to consider Rick's belated request for oral testimony under section 217.

Several weeks later, the court issued a written order granting Rhona's motion and ordering Rick to pay $300,000 in sanctions. The court found Rick had engaged in obstreperous and dilatory behavior that frustrated settlement, behaved in a manner that impeded communication, and failed to engage in good faith settlement discussions. It further found Rick had failed

---

[4] In his opposing memorandum, Rick did not cite to section 217, did not make any mention of testimony by or cross-examination of Rhona, and implied only that he desired to present his "side of the story." He reiterated the latter point in his declaration, stating an evidentiary hearing was needed to "fully present [his] side of the story." He did serve Rhona with a notice to appear pursuant to Code of Civil Procedure section 1987, but again made no reference to section 217.

to timely pay the previously ordered discovery sanctions and his excuse for failing to do so was disingenuous.[5]  The court denied Rick's request for an evidentiary hearing, concluding "that live testimony was not necessary to determine the credibility of the witnesses and that the pleadings and arguments by counsel were sufficient for the court to make its determination without need for an additional hearing. . . ."

## DISCUSSION

### *Applicable Law and Standard of Review*

Section 271, subdivision (a) provides: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.  An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. . . ."  The statute "imposes a 'minimum level of professionalism and cooperation,' to effect the policy favoring settlement of family law litigation—and a reduction of the attendant costs."  (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1524.)

Section 217, subdivision (a) provides that at a hearing on a motion brought pursuant to the Family Code, the trial "court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties."  However, "[i]n appropriate cases, a court may make a finding of good cause to refuse to receive live testimony

---

[5]  Although Rhona also claimed Rick violated various temporary restraining orders, the trial court reserved those matters for trial.  We express no opinion as to whether such conduct, if proven, would justify an award of sanctions under section 271.

4

and shall state its reasons for the finding on the record or in writing." (*Id.*, subd. (b).) Rule 5.113 lays out factors for a court to consider in making a finding of good cause under section 217, including whether "a substantive matter is at issue," "material facts are in controversy," and "live testimony is necessary for the court to assess the credibility of the parties or other witnesses. . . ." (Rule 5.113(b)(1)–(3).) If the court finds "good cause to exclude live testimony, it must state its reasons on the record or in writing. The court is required to state only those factors on which the finding of good cause is based." (Rule 5.113(c).)

"Sanctions under section 271 are committed to the discretion of the trial court, and will be reversed on appeal only on a showing of abuse of that discretion, that is 'only if, considering all of the evidence viewed more favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.'" (*In re Marriage of Davenport, supra*, 194 Cal.App.4th at p. 1524.) A court's good cause determination under section 217 is also reviewed for abuse of discretion. (*In re Marriage of Hearn* (2023) 94 Cal.App.5th 380, 390.) However, "'[w]e review any factual findings made in connection with [a sanctions] award under the substantial evidence standard.'" (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177.)

### *Refusal of Live Testimony*

The trial court concluded "that live testimony was not necessary to determine the credibility of the witnesses and that the pleadings and arguments by counsel were sufficient for the court to make its determination without need for an additional hearing at a later date." The court did not abuse its discretion in reaching such a conclusion.

At the hearing, the court advised the parties it had reviewed the entirety of their submissions—which totaled more than 500 pages—and at

5

the end of the hearing, it stated their arguments were a "rehash" of what was in those pleadings. These statements "notified the parties that the court was well-informed as to the relevant events and the parties' positions" and signaled "that the court was familiar with the facts and the arguments." (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1132 [court impliedly concluded material facts were not in controversy and that live testimony was not necessary to assess the parties' credibility]; see *In re Marriage of Hearn, supra*, 94 Cal.App.5th at p. 391 [no abuse of discretion where trial court stated it had reviewed the parties' submissions, was familiar with the case, and it determined the matter had been so exhaustively briefed that an evidentiary hearing would not give the court information not already included in the written submissions].)

Rick insists the trial court needed oral testimony for three reasons: a substantive matter was at issue; material facts were in dispute; and to assess the parties' credibility.

*Substantive Matter at Issue (Rule 5.113 (b)(1))*

Requests for sanctions are not " 'substantive matter[s]' " under section 217 and rule 5.113. (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 605 (*Diamond*).)

Rick claims, however, that "[s]ection 217 vested the trial court with the discretion to determine whether the issue was substantive or not and it found that it was." He cites no authority for any such "discretion" on the part of the trial court. Nor does he cite to any such finding by the trial court here. Rather, he asserts "the absence of a finding in the court's [order] that a substantive matter was <u>not</u> at issue means the court necessarily found Rhona's sanctions request was a substantive matter." Not surprisingly, Rick also cites no authority for this remarkable proposition.

6

In short, there is no merit to Rick's assertion that this factor entitled him to an evidentiary hearing with live witnesses.

*Material Facts in Controversy (Rule 5.113 (b)(2))*

Rick maintains the material facts "were . . . hotly disputed." He points out, for example, that Rhona claimed his attorneys were "purposefully uncommunicative," but he averred his attorneys "consistently responded to Rhona where necessary and it was she, not him, who had been nonresponsive." He points out Rhona claimed he had not made "good faith offers" in settlement negotiations, but he averred "the exact opposite," that it was Rhona "who failed to negotiate settlement in good faith."

However, what Rick is taking issue with are not the operative facts, but rather, conclusions that could be drawn therefrom. As to the operative facts, there appears to be very little dispute, and none that Rick demonstrates was material.

Furthermore, even if the operative facts were in dispute, a trial court is not required to hear live testimony but can make findings based solely on the documentary evidence before it. (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 (*Shamblin*) [a trial court's ability to "assess credibility and resolve any conflicts in the evidence" is entitled to great weight, and "appellate court[s] should defer to the factual determinations made by the trial court when the evidence is in conflict," irrespective of "whether the trial court's ruling is based on oral testimony or declarations"].)

Accordingly, Rick has not made a case of entitlement to an evidentiary hearing under this factor.

*Parties' Credibility (Rule 5.113 (b)(3))*

Rick devotes most of his argument to the issue of witness credibility, insisting live testimony was required for the trial court to make the

7

credibility calls purportedly underlying its findings against him. According to Rick this was "a classic case of 'he said, she said' " that could only be resolved by the court considering live testimony and on that basis assessing the parties' credibility.

To begin with, as we have recited, a live evidentiary hearing is not required for a trial court to assess credibility. It is well-established that a court sitting as a finder of fact can make credibility determinations on the basis of sworn declarations and other record evidence. (See *Shamblin, supra,* 44 Cal.3d at p. 479; accord, *Desert Outdoor Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 868, fn. 1 [appellate courts give deference to trial court's credibility call whether based on oral or documentary evidence].)

Furthermore, while Rick points to several supposed evidentiary disputes that purportedly turn on witness credibility which should have been assessed on the basis of live testimony, in fact, the operative facts are, again, largely undisputed.

For example, Rick points out Rhona submitted a copy of a text message wherein he stated, "I have told my attorneys I don't want to hear from them but once a month." He then points to his own declaration wherein he averred he is "in regular communication with" his attorneys, he knows "everything that has been going on" in the case, and his "attorneys consistently respond to opposing counsel in a timely fashion when and if necessary." Rick did not, however, deny making the text statement. In fact, he conceded there were instances where his counsel did not respond to Rhona, stating that because "I choose not to pay my attorneys to respond to her unnecessary provocations," "does not make me uncooperative or unreasonable."

As another supposed example, Rick points to a dispute over the payment of taxes. Rhona proposed a stipulation regarding the filing of

8

returns and payment of taxes, and two months later sent an updated proposal. Rick's counsel did not respond to either. When Rhona's counsel followed up, Rick's counsel advised she had sent the stipulation on to Rick and was "awaiting his response." When Rhona filed the instant motion for sanctions six weeks later, Rick's counsel had yet to respond. And when Rhona filed her reply memorandum (five months after the updated stipulation had been sent to Rick's counsel), Rick's counsel still had not returned an executed stipulation. In his opposing declaration, Rick admitted he never signed the stipulation, but averred the taxes were paid from the sources and in the manner set forth in the stipulation, making the stipulation unnecessary. While the taxes may have gotten paid in the manner proposed by Rhona, this does not change the fact that Rick needlessly stonewalled Rhona and exhibited zero cooperation on this issue.

Rick also points to 14 stipulations he did agree to as exhibiting cooperation. However, Rhona declared that her attorneys proposed and drafted 11 of those stipulations, and her attorney had to repeatedly contact Rick's counsel for responses. Nothing Rick says contradicts Rhona's declaration.

Rick additionally points to the parties' efforts to appoint a discovery referee as illustrative of an evidentiary conflict that should have been resolved on the basis of live testimony. Again, he vastly overstates any supposed conflict. Rhona proposed the parties appoint a referee, and she averred in her declaration that Rick did not respond. In opposition, Rick declared, "contrary to Rhona's assertions, we have now appointed a discovery referee." It is true that by the time Rick filed his opposition, the parties had reached an agreement on a referee. It is also undisputed that Rick ignored Rhona's proposal for four months. He responded only after being sanctioned

9

in connection with a prior discovery dispute.  Moreover, the parties could not agree on a referee until Rhona filed the instant motion for sanctions.  In short, it is undisputed that one full year passed between Rhona's suggestion to appoint a discovery referee and the appointment of a referee.

In any case, even if Rick were correct in asserting the parties' declarations conflicted "on almost every material fact," he has not demonstrated that the trial court abused its discretion in concluding an evidentiary hearing was not required to assess credibility.  The court reviewed the pleadings and stated it was able to resolve any conflicts in the evidence.  (See *Shamblin, supra,* 44 Cal.3d at p. 479.)  Moreover, "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Id*. at pp. 478–479; see also *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329 [even if we "could reasonably make a different assessment of credibility[, this] is not sufficient grounds for reversal"].)

*Due Process*

We are also not persuaded by Rick's assertion that section 271, when read in conjunction with section 217, and taking into account due process concerns, mandated live testimony and superseded any finding of good cause not to hold such a hearing.  He has not cited, nor are we aware of, a single authority supporting such a construction of the statutes.

Sanctions may be awarded pursuant to section 271 "only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard."  (§ 271, subd. (b).)  Rhona served her request for sanctions on Rick and he had an opportunity to respond and, indeed, did so both in writing and at the hearing.  No additional process was required.  (See *Diamond, supra*, 72 Cal.App.5th at p. 605.)

10

*No Prejudice*

Finally, even if we were to assume that the trial court abused its discretion in refusing Rick's belated request for live testimony, Rick has failed to show how he was thereby prejudiced. He made no offer of proof in the trial court as to what he or Rhona would have said on the witness stand, either directly or on cross-examination. Accordingly, Rick cannot prevail on appeal. " 'To preserve an evidentiary ruling for appellate review, the proponent of the evidence must make an offer of proof regarding the anticipated testimony. [Citation.] The offer of proof must address the "substance, purpose, and relevance of the excluded evidence" (Evid. Code, § 354, subd. (a)), and must set forth the actual evidence to be produced and not merely the facts or issues to be addressed and argued [citation]. . . .' (*People v. Carlin* (2007) 150 Cal.App.4th 322, 334 . . .; see also *In re Mark C.* (1992) 7 Cal.App.4th 433, 444 . . . [failure to make an adequate offer of proof precludes consideration of the alleged error on appeal].)" (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 329; see *Diamond, supra*, 72 Cal.App.5th at p. 605 [husband did not identify testimony he would have elicited cross-examining wife "that would have had a bearing on the court's decision"].)

### Finding Regarding Prior Discovery Sanctions

The trial court found "that [Rick's] failure to timely pay the previously ordered sanctions (based on the court's failure to include a deadline for payment, despite the deadline to comply with the court's companion order) to be disingenuous." Rick maintains this finding is not supported by the record. We agree on this point.

In ruling on Rhona's earlier motion to compel discovery responses, the court granted the motion and ordered Rick to provide amended discovery responses and within 30 days to pay $15,000 in sanctions. As it is

11

undisputed Rick paid the sanctions within the 30-day deadline, the court's finding is not supported by substantial evidence. However, while Rick timely paid the sanctions, he did not supply further discovery responses for another two months, taking almost three months to serve the responses. His explanation was that the court's discovery order did not include a deadline for the further responses. Thus, it is possible the trial court was referring to this explanation in finding Rick to be "disingenuous." But for better or worse, the court's order specified a deadline only for the payment of sanctions not for service of the further discovery responses.

We cannot discern whether this finding impacted the amount of the sanctions award. As Rick points out, the amount of section 271 sanctions must be tied to the amount of attorney fees and costs the moving party incurred because of the obstructive behavior. In other words, the trial court cannot award an amount that simply seems a fair penalty for the misconduct. (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152–1156.) We shall therefore remand for the limited purpose of having the trial court determine whether the amount of the sanctions awarded included attorney fees incurred in connection with purported delay in paying the discovery sanctions and, if so, reducing the amount of the 271 sanctions accordingly.

## DISPOSITION

The order dated December 2, 2021, is REVERSED in part and the matter is remanded for the limited purpose of having the trial court determine whether the amount of the sanctions awarded included attorney fees incurred in connection with purported delay in paying the discovery sanctions and, if so, reducing the amount of the 271 sanctions accordingly. The order is otherwise AFFIRMED. Parties to bear their own costs on appeal.

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Getty, J.*


**Judge of the Solano County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A164210, Thompson v. Thompson

13